Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Christine Wolner*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Wolner,<br><br>       Plaintiff,<br><br>   v.<br><br>Hartford Life and Accident Insurance Company; Intergalactic Incorporated; Intergalactic Incorporated Disability Plan,<br><br>       Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Christine Wolner (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2.     Plaintiff is a resident of Pima County, Arizona.

3.     Upon information and belief, Intergalactic Incorporated (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford"). The specific Hartford long-term disability group insurance policy is known as Group Policy No.: 83117055 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees. Upon information and belief, the Hartford Policy may have been included in and part of an employee benefit plan, specifically named the Intergalactic Incorporated Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.     Upon information and belief, Hartford functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Hartford.

5.     Hartford operated under a conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits.

6.      Hartford's conflict existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

7.      The Company, Hartford and the Plan conduct business within Pima County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

8.      Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

9.      Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan and any other Company Plan, as a result of being found disabled in this action.

10.     Plaintiff also seeks a determination that she is disabled and meets the "Any Occupation" definition of disability set forth in the Plan and/or Policy as all the evidence she submitted to Hartford supports a determination by the Court that she meets the Plan and/or Policy's "Any Occupation" definition of disability. Plaintiff believes this issue is ripe before the Court since the "Regular Occupation" timeframe in the Plan and/or Policy has expired at the time of filing this complaint.

11.     After working for the Company as a loyal employee, Plaintiff became disabled on or about September 10, 2013, due to serious medical conditions and was unable to work in her regular occupation as an Accounting Assistant. Plaintiff has remained

-3-

continuously disabled as that term is defined in the relevant Policy for both "Regular Occupation" and "Any Occupation" benefits since the day she became disabled and has not returned to work in any occupation as a result of her serious medical conditions.

12. Following the onset of her disability, Plaintiff filed a claim for short-term disability benefits which was approved by Hartford, and those benefits have been paid and exhausted. Hartford reviewed the evidence in her short-term disability claim and concluded Plaintiff was disabled and unable to engage in her regular occupation with the Company. Hartford approved Plaintiff's short-term disability claim for the duration of the claim and she exhausted those benefits.

13. Upon information and belief, the Company's short-term disability Plan contained a "Regular Occupation" definition of disability. The fact that the short-term disability Plan contained a similar definition of disability as is set forth in the Hartford Policy and Hartford reviewed and approved Plaintiff's short-term disability benefits is relevant evidence for this Court to consider with regard to the unreasonableness of Hartford's denial of her long-term disability claim.

14. Following the exhaustion of her short-term disability claim (benefits), Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by Hartford. Hartford made every decision in Plaintiff's long-term disability claim.

15. Upon information and belief, the relevant Hartford Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

You are disabled when Hartford determines that:

During the Elimination Period and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:

- continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and
- not Gainfully Employed.

After the LTD Monthly Benefit has been payable for 24 months, Disability means that Injury or Sickness causes physical or mental impairment to such a degree that You are:

- continuously unable to engage in any occupation for which You are or become qualified by education, training, or experience; and
- not Gainfully Employed.

16. In support of her claim for long-term disability benefits, Plaintiff submitted to Hartford, medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

17. In support of her claim, Plaintiff submitted to Hartford one of its own medical questionnaires dated January 27, 2015 that was completed by her treating physician who confirmed that as a result of Plaintiff's medical conditions, she has restrictions and limitations that would preclude her from engage in any gainful occupation.

18. Hartford approved Plaintiff's claim for long-term disability benefits and paid her disability benefits through March 30, 2015, when it terminated Plaintiff's disability claim and benefits without any medical documentation supporting its allegation that her medical conditions had improved in any way that would allow her to return to work.

19. As part of its review of Plaintiff's claim, Hartford obtained medical records only "paper reviews" from two (2) physicians named, John P. Zincone, M.D. and Ronald S. Sims, M.D. Upon information and belief, Plaintiff believes Drs. Zincone and Sims may be long time medical consultants for Hartford and/or the disability insurance industry. As a result, Plaintiff believes Drs. Zincone and Sims may have incentives to protect their own consulting relationships with Hartford and/or the disability insurance industry by providing

1  opinions and reports which are favorable to Hartford and/or other disability insurance
2  companies, and which supported the termination of Plaintiff's long-term disability benefits.

3      20.    Plaintiff submitted to Hartford one of its own medical questionnaires dated
4  just two weeks before Hartford terminated her long-term disability benefits, March 11,
5  2015, completed by her treating physician who confirmed she had reviewed Dr. Zincone's
6  assessment of Plaintiff's restrictions/limitations and that she, "[disagreed] with the
7  evaluation. She is on many medications without much improvement." Plaintiff's treating
8  physician further confirmed in the medical questionnaire that Plaintiff has significant
9  medical issues which would preclude her from working in any occupation.

10      21.    In a letter dated March 30, 2015, Hartford informed Plaintiff it was
11  terminating her long-term disability benefits as of March 30, 2015.

12      22.    Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Hartford's March 30,
13  2015 termination of her disability benefits.

14      23.    In support of her appeal and claim for long-term disability benefits, Plaintiff
15  submitted to Hartford additional medical evidence demonstrating that she met any definition
16  of disability set forth in the Policy.

17      24.    Plaintiff submitted to Hartford updated medical records from each of her
18  treating medical professionals.

19      25.    As part of its review of Plaintiff's claim, Hartford obtained two (2) medical
20  records only "paper reviews" of Plaintiff's claim from Maureen Smith Ruffell, M.D. and
21  Randall B. King, M.D., who are consulting physicians for the University Disability
22  Consortium (hereinafter "UDC"). As the attached interrogatory answers confirm *(See*
23  Exhibit "A" to this Complaint), UDC has a long and extensive business relationship with the

disability insurance industry and potentially Hartford by providing the type of medical records reviews as occurred in this case.

26. Plaintiff alleges that UDC may derive a significant amount of annual revenue from its business relationship with Hartford.

27. Due to its long business relationship with the disability insurance industry, Plaintiff alleges that UDC may not have implemented a system or process to regularly and consistently monitor the independence and impartiality of the medical professionals that it retains to perform the type of reviews that it provided to Hartford in Plaintiff's claim.

28. Plaintiff alleges that in the review of her claim and due to what may be UDC's extensive business relationship with the disability industry, Drs. Ruffell and King were not independent, objective or impartial with regard to the opinions she rendered regarding whether or not Plaintiff was disabled.

29. Upon information and belief, Plaintiff alleges Drs. Ruffell and King may be long time medical consultants for the disability insurance industry, UDC and/or Hartford. As a result, Plaintiff believes Drs. Ruffell and King may have incentives to protect their own consulting relationship(s) with the disability insurance industry, UDC and/or Hartford by providing medical records only paper reviews, which selectively review, ignore and minimize evidence of disability such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Hartford and/or other disability insurance companies, and which supported the denial of Plaintiff's long-term disability claim.

30. Prior to rendering its final denial in Plaintiff's claim, Hartford never shared with Plaintiff the medical records only "paper reviews" authored by Drs. Ruffell and King so she could respond to the reports and/or perfect her claim. Hartford's failure to provide Plaintiff with the opportunity to respond to Drs. Ruffell and King's reports prior to its final

administrative denial is an ERISA procedural violation, it precluded a full and fair review pursuant to ERISA and also violates Ninth Circuit case law.

31. In a letter dated June 25, 2015, Hartford notified Plaintiff it had denied her claim for long-term disability benefits under the Policy. In the letter, Hartford also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

32. Upon information and belief, Hartford's June 25, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met any definition of disability in the Policy.

33. On October 22, 2015, Hartford provided Plaintiff with a copy of the June 23, 2015 reports authored by Maureen Smith Ruffell, M.D. and Randall B. King, M.D.

34. Pursuant to ERISA and Ninth Circuit case law, Plaintiff should have been provided the opportunity during Hartford's review of her claim to respond to Drs. Ruffell King's reports. Following the final administrative denial of her claim by Hartford, in a letter dated June 20, 2016, in order to engage Hartford in a dialogue and to cure the deficiencies it alleged existed in her case, Plaintiff submitted additional medical evidence, including a March 11, 2016 response from her current treating physician to Dr. King's June 23, 2015 report, and requested for Hartford to reopen her claim and consider this additional evidence.

35. The additional evidence from Plaintiff's treating provider is highly relevant as he provided a specific response to Dr. King's report and his opinions which were relied on

-8-

1  by Hartford in terminating Plaintiff's benefits and denying her claim. In his response, notwithstanding Dr. King's report and opinions, Plaintiff's treating physician opined that Plaintiff was disabled and unable to work in any occupation due to her work limitations.

36. Plaintiff also submitted to Hartford a vocational report authored by a vocational expert who after reviewing Dr. King's report, the response from Plaintiff's treating physician and both definitions of disability in the policy concluded Plaintiff is not employable in any occupation with the restrictions and limitations provided by her treating physician.

37. In a response letter dated June 23, 2016, Hartford informed Plaintiff it was denying her request to reopen her claim and that it would not consider any additional medical documentation as her claim was closed.

38. Plaintiff alleges her June 20, 2016 letter, along with the medical documentation submitted as an attachment thereto, should be part of the Administrative Record and/or considered as extrinsic evidence by this Court due to Hartford's ERISA procedural error of not engaging her in a dialogue, not disclosing its doctors' reports and not proving an opportunity to respond to the reports and allowing her to perfect/cure the record. If Hartford had not committed this ERISA procedural violation, and had instead provided Plaintiff with a full and fair review as required by ERISA along with following Ninth Circuit case law, she would have been afforded the opportunity to provide this evidence during the administrative review of her claim.

39. In evaluating Plaintiff's claim on appeal, Hartford owed her a fiduciary duty and had an obligation pursuant to ERISA to administer it "solely in [her] best interests and other participants" which it failed to do.[1]

40. Hartford failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Hartford's failure to investigate the claim and to engage in this dialogue and to ask for or to obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is a violation of ERISA, Ninth Circuit case law and a reason she did not receive a full and fair review.

41. Plaintiff alleges Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to adequately investigate her claim because its reviewing medical professionals were not truly independent; failing to credit Plaintiff's reliable evidence; failing to obtain an Independent Medical Examination when the policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and denials; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could respond to Dr. Ruffell's report by submitting the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

42. Plaintiff alleges the reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Hartford undertook as decision maker and payor of benefits. Hartford's conflict of interest provided it with a financial incentive to deny Plaintiff's claim and when it did deny her claim, it saved itself money.

43. Plaintiff is entitled to discovery regarding Hartford's aforementioned conflicts of interests, the conflicts of interest of any third party vendor who retained any reviewing medical professionals and of *any* individual who reviewed her claim. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced Hartford's decision to terminate her long-term disability benefits and deny her claim.

44. With regard to whether Plaintiff meets both definitions of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Hartford as referenced herein abused any discretion that may have been afforded in the Policy and are so flagrant they justify *de novo* review.

45. As a direct result of Hartford's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may have been entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled. Plaintiff believes other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

46. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

47. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that she meets the "Regular Occupation" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to these benefits and any other non-disability employee benefits she may be entitled to as a result of that Order, from the date she was first denied these benefits through the date of judgment with prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

     C.     For an Order that the evidence in Plaintiff's claim is sufficient to prove that she also meets the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy and is entitled to these benefits in addition to other non-disability employee benefits and pre-judgment interest thereon;

     D.     Plaintiff also seeks an Order directing Defendants to continue paying Plaintiff her "Any Occupation" disability benefits, and any other non-disability employee benefits she may be entitled to until such a time as she meets the conditions for the termination of benefits;

     E.     Alternatively, if the Court determines that it is unable to make an "Any Occupation" determination for any reason, then Plaintiff seeks an Order remanding her claim and allowing her to submit additional evidence to the Plan Administrator so it may determine whether she meets the "Any Occupation" definition of disability as set forth in the Plan and/or Policy;

     F.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

     G.     For such other and further relief as the Court deems just and proper.

DATED this 11th day of July, 2016.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff